**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

|  |  |  |
|---|---|---|
| ELDRIDGE PALMORE THORNTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:13cv40 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Eldridge Palmore Thornton ("Mr. Thornton") seeks judicial review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration ("Acting Commissioner"), which denied Mr. Thornton's claim for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433 ("the Act"). Mr. Thornton filed a Motion for Summary Judgment, ECF No. 12, with a memorandum in support, ECF No. 13. In response, the Defendant filed her own Motion for Summary Judgment, ECF No. 16, with a memorandum in support, ECF No. 17. Mr. Thornton did not file a reply.

This action was referred to the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** the Acting Commissioner's Motion for Summary Judgment, ECF No. 16, be **GRANTED**, Mr. Thornton's Motion for

Summary Judgment, ECF No. 12, be **DENIED**, the final decision of the Acting Commissioner be **AFFIRMED**, and this case be **DISMISSED**.

## I. PROCEDURAL BACKGROUND

Mr. Thornton filed an application for DIB and Supplemental Security Income ("SSI") on March 21, 2007, alleging a disability onset date of January 1, 2005. R. 13.[1] Mr. Thornton's date last insured was December 31, 2006, and he must establish disability on or before that date. R. 29. On July 6, 2007, Mr. Thornton was awarded SSI, but his application for DIB was denied. R. 86, 97. Mr. Thornton filed a second application for DIB on November 10, 2009, which was denied on January 22, 2010. R. 167. Mr. Thornton appealed his claim on February 8, 2010, with an amended alleged onset date of December 25, 2006.[2] R. 13, 30-31. His appeal was denied upon reconsideration on June 11, 2010. R. 82.

On August 9, 2010, Mr. Thornton requested a hearing in front of an administrative law judge ("ALJ"). R. 121. The hearing was held in front of the ALJ on September 14, 2011, during which the testimony of Mr. Thornton, his wife Alice Thornton ("Mrs. Thornton"), and a vocational expert ("VE") was taken. R. 13. The ALJ issued her decision on October 27, 2011, denying Mr. Thornton's DIB claim. *Id.* The ALJ found that Mr. Thornton was not entitled to DIB because he was not under a disability as defined in the Act at any time from the alleged disability onset date (Dec. 25, 2006) to the date last insured (Dec. 31, 2006). R. 21.

The Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Mr. Thornton's request for review of the ALJ's decision on January 15, 2013. R.1-3. Consequently, the ALJ's decision became the final decision of the Acting Commissioner. Mr.

---

[1] "R." refers to the certified administrative record, that was filed under seal on June 24, 2013, pursuant to E.D. Va. Local Civil Rules 5(B) and 7(C)(1).
[2] Mr. Thornton amended the alleged onset date of disability at the ALJ hearing. *See* R. 30-31.

Thornton filed his complaint for judicial review of the Acting Commissioner's final decision denying his application for DIB on March 27, 2013. ECF No. 3. The Defendant filed an answer on June 24, 2013. ECF No. 6. Because both parties have filed motions for summary judgment, the matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Under the Act, this Court's review of the Acting Commissioner's final decision is limited to determining whether the Acting Commissioner's decision was supported by substantial evidence in the record and whether the proper legal standard was applied in evaluating the evidence. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1996)).

This Court must examine the record as a whole, but cannot re-weigh the conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig*, 76 F.3d at 589 (4th Cir. 1996)). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [ALJ]." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The Acting Commissioner's findings as to any fact, if findings are supported by substantial evidence, are conclusive and should be affirmed. *Perales*, 402 U.S. at 390.

## III. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential assessment of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R § 404.1520; *Mastro*, 270 F.3d at 177. The ALJ conducts this analysis for the Acting Commissioner. The Court reviews the record and examines the five-step analysis to determine whether the correct standards were applied and whether the resulting decision of the Acting Commissioner is supported by substantial evidence.

Pursuant to the five-step sequential evaluation set forth at 20 C.F.R § 404.1520, *see Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981), the ALJ made the following findings of fact and conclusions of law: First, Mr. Thornton did not engage in substantial gainful activity ("SGA") during the period from his amended alleged disability onset date of December 25, 2006 through his date last insured of December 31, 2006. R. 15. Second, through the date last insured, Mr. Thornton had the following severe impairments: hypertension, morbid obesity, and high cholesterol. *Id.* The ALJ found that these impairments "cause more than minimal work-related limitations and thus were 'severe' as that term is defined in the Regulations." R. 16. However, the ALJ found that Mr. Thornton's other impairments – kidney problems, stroke/cerebrovascular accident, mental impairments, diabetes mellitus, and cardio-pulmonary disease – were not considered "severe." *Id.* These non-severe impairments have been responsive to treatment, cause only "minimally vocationally relevant limitations," have not lasted, nor are expected to last, for at least 12 months, or have not been diagnosed by an acceptable medical source. *Id.* Third, Mr. Thornton did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). Fourth, Mr.

4

Thornton has the residual functional capacity ("RFC") to perform medium work[3] as defined in

20 C.F.R. 404.1567(c). The ALJ found that Mr. Thornton could lift, carry, push, or pull 50

pounds occasionally and 25 pounds frequently, could stand and/or walk for 6 hours of an 8 hour

workday, or sit for 6 hours of an 8 hour workday. R. 17. However, the ALJ determined that Mr.

Thornton should avoid even moderate exposure to extreme heat and humidity, and he was unable

to perform any past relevant work as a butcher at a meat packing plant. R. 17, 19. Fifth, after

considering Mr. Thornton's age, education, prior work experience, RFC, and the testimony of the

VE at the hearing, the ALJ determined that there were jobs that existed in significant numbers in

the national economy that Mr. Thornton could have performed. R. 19-20. The ALJ concluded

that Mr. Thornton was not disabled as defined by the Act at any time from December 25, 2006

through December 31, 2006, the date last insured. R. 20. The Appeals Council denied Mr.

Thornton's request for review and the ALJ's decision became the final decision of the Acting

Commissioner. R. 1-3.

## IV. RELEVANT FACTUAL BACKGROUND

Mr. Thornton originally alleged a disability onset date of January 1, 2005. R. 13, 29-30.

With the advice and consent of counsel at the hearing, Mr. Thornton amended the alleged onset

date of disability to December 25, 2006. *Id.* As of that date, Mr. Thornton was a fifty-five year-

old male who completed 11th grade and last worked in 2001 as a butcher at Worman Meat

Packing in Smithfield. R. 48, 167. Mr. Thornton had a stroke in March 2007; however, Mr.

Thornton's testimony before the ALJ concerns only whether Mr. Thornton became disabled

under the Act prior to the date last insured. R. 13, 385-387. At the ALJ hearing held on

---

[3] "Medium work" is defined by the regulations as work which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."

September 14, 2011, Mr. Thornton was represented by counsel, and the ALJ took testimony from Mr. Thornton, his wife, and the VE. R. 13. Mr. Thornton provided the following testimony upon examination by the ALJ and his own attorney:

Mr. Thornton last worked in 2001 as a butcher at Worman Meat Packing in Smithfield, Virginia. R. 48, 52. Mr. Thornton and his wife both testified that in 2001, Dr. Showflake examined Mr. Thornton and determined that Mr. Thornton's blood pressure was too uncontrollable for him to continue his work at Worman. R. 35-36, 48. Although Mr. Thornton attempted to look for other jobs, no employer would hire him because no doctor would release him to return to work on account of his high blood pressure. R. 40. When asked to describe his disabling symptoms, Mr. Thornton described experiencing severe headaches that felt as though someone was "bouncing that basketball in the yard," and he would have these severe headaches every other day and every night. R. 19, 38.

Mr. Thornton reported that in 2006 he was trying to lose weight. In pursuance of that goal he was riding his bicycle every morning for about 5-6 miles, he would sometimes walk about 3 miles, and he was lifting weights on a regular basis (about 150 pounds). R. 50-51, 53. Additionally, Mr. Thornton reported that after he stopped working, on a typical day he would work on cars in his yard to make some money. He would spend about 4-6 hours each day working on cars. R. 39.

Mr. Thornton's wife provided the following testimony upon examination by the ALJ and Mr. Thornton's attorney:

Mrs. Thornton reported that at times Mr. Thornton would get dizzy and light-headed, and she would have to remind him to take his medication. R. 44. Often when Mr. Thornton would work on cars he would get hot, his feet would ache, and he would get light-headed. R. 47. Mrs.

Thornton reported that when Mr. Thornton would work outside she would regularly need to tell him to sit down and come inside. R. 50. She testified that Mr. Thornton had severe headaches about once per week. R. 46.

Mrs. Thornton reported that after Mr. Thornton's medical insurance ran out, he could no longer afford his blood pressure medication, so he stopped taking it. R. 45. She testified that he was out of medication for "about a couple of year[s], maybe a year or so." R. 46. Mrs. Thornton noted that after Mr. Thornton stopped taking his medication, he would go to the emergency room when his symptoms became severe. During those emergency room visits he would be given samples of medications in lieu of filling his prescriptions, which he could not afford. However, Mrs. Thornton also testified that Mr. Thornton had not seen a doctor nor taken any prescription medications for about a year preceding his stroke in March 2007. R. 17, 46. When the ALJ asked if the Thorntons had pursued less expensive prescription medications, Mrs. Thornton explained that for a while she did not think about going to a place with less-expensive prescriptions, such as Wal-Mart. R. 46.

The ALJ found that there was very little objective medical evidence for the period from 2004-December 31, 2006. R. 18. Although there were office treatment records from November 9, 2000 that showed Mr. Thornton had high blood pressure and an ejection fraction of 60%, medical records from 2003-2004 showed that Mr. Thornton's blood pressure was much lower. R. 18, 1087-1088, 1092. Also, Mr. Thornton testified that he currently weighed 330 pounds, whereas his medical records indicated that in 2003-2004 his weight was much lower, ranging from 290-300 pounds. R. 18, 1092. Notably, the ALJ found no medical evidence to support Mr. Thornton's testimony that his doctor took him out of work in 2001, or that any doctor refused to release him back to work. R. 18.

7

Based on the medical evidence in the record and the testimony from Mr. and Mrs. Thornton, the ALJ determined that Mr. Thornton had an RFC to perform medium work. In reaching her decision, the ALJ found that the medical evidence in the record did not support a finding that Mr. Thornton was disabled "based upon the clinical findings and the totality of the evidence." R. 19. During the period at issue, the ALJ found that Mr. Thornton had three severe impairments: hypertension, morbid obesity, and high cholesterol. R. 15. There was no medical evidence to show that Mr. Thornton's other impairments (kidney problems, stroke/cerebrovascular accident, mental impairments, diabetes mellitus, and cardio-pulmonary disease) existed before his stroke in March 2007. R. 16. The ALJ gave little weight to Mrs. Thornton's testimony because it was inconsistent and it conflicted with Mr. Thornton's testimony. R. 19. The ALJ found that Mr. Thornton was noncompliant with his blood pressure medication, and there was no evidence that he tried to purchase lower priced medications. R. 18. Mr. Thornton also testified that he was able to walk, ride his bike, and lift anywhere between 25-100 pounds, which is consistent with a RFC to perform medium work.

Mr. Thornton raises three issues on review: (1) Whether the ALJ erred by giving little weight to the testimony of Mrs. Thornton, the wife of Mr. Thornton; (2) Whether the ALJ erred by finding that Mr. Thornton was not fully credible; and (3) Whether the ALJ erred by failing to consider the effects of Mr. Thornton's uncontrolled high blood pressure. ECF No. 13 at 2. Mr. Thornton requests that this Court remand his case to the Acting Commissioner with directions to enter an award of benefits to him, or alternatively to remand his case for further administrative proceedings. For the reasons discussed below, the Court would affirm the final decision of the Acting Commissioner and dismiss the case.

## V. ANALYSIS

**A. The ALJ properly gave little weight to the lay testimony of Mr. Thornton's wife.**

Mr. Thornton argues that the ALJ erred by giving little weight to the testimony of Mrs.

Thornton. Specifically, Mr. Thornton asserts that Mrs. Thornton's testimony was not

inconsistent with medical records regarding Mr. Thornton's health conditions, and that the ALJ

should have considered her testimony as evidence even if it was unsubstantiated by objective

medical evidence. ECF No. 13 at 16. In support of his argument, Mr. Thornton cites *Grebenick*

*v. Chater,* 121 F.3d 1193, 1199 (8th Cir. 1997), for the proposition that "once the diagnosis is

established, but the severity of the degenerative condition during the relevant period is

unanswered, the claimant may fill the evidentiary gap with any testimony . . . ." Mr. Thornton

argues that Mrs. Thornton's testimony supplements the medical records, and that the ALJ's

assessment of Mrs. Thornton's testimony was too narrow and should have been considered as

evidence even though unsubstantiated by medical evidence. ECF No. 13 at 15-16.

However, the ALJ is not required to give non-medical sources significant weight in her

assessment. Rather, an ALJ "may" use evidence from other non-medical sources, such as

testimony from spouses, parents, and friends, to show the severity of one's impairment(s) and

how it affects their ability to work. *See* 20 C.F.R. § 416.913(d)(4); *see also* 20 C.F.R. §

416.913(d)(4). Although "information from [non-medical sources] . . . may provide insight into

the severity of the impairment(s) and how it affects the individual's ability to function," these

non-medical sources should be considered in light of "the nature and extent of the relationship,

whether the evidence is consistent with other evidence, and any other factors that tend to support

or refute the evidence." Social Security Ruling ("SSR") 06-03p.

9

The ALJ gave Mrs. Thornton's testimony little weight because it was inconsistent and conflicted with Mr. Thornton's testimony and the objective medical evidence. R. 19. First, Mrs. Thornton testified that Mr. Thornton went to the emergency room when his blood pressure was extremely high, but later said he had not been to a doctor for a year prior to the stroke. There was no medical evidence in the record that Mr. Thornton had been to the emergency room during the relevant time period. R. 45-46. Second, Mrs. Thornton's testimony was inconsistent with Mr. Thornton's testimony. Mrs. Thornton reported that Mr. Thornton had severe headaches about once per week, whereas Mr. Thornton had testified that he had severe headaches every other day and every night. R. 19.

Ultimately, the ALJ considered Mrs. Thornton's testimony and concluded that it was inconsistent with both the objective medical evidence and Mr. Thornton's testimony. While portions of Mrs. Thornton's testimony could be construed as supporting Mr. Thornton's claim for disability, the totality of the other evidence in the record failed to show that Mr. Thornton had a disabling impairment. *Accord Prater v. Harris*, 620 F.2d 1074, 1085-86 (4th Cir. 1980) ("Other than the lay testimony, the other evidence adduced was inadequate to prove, by a preponderance of the evidence, that the claimant was disabled . . . ."). In light of her findings, the Court would find that the ALJ properly gave little weight to Mrs. Thornton's testimony, and that the ALJ's decision to do so was supported by substantial evidence in the record.

### B.  The ALJ reasonably found Mr. Thornton's description of his symptoms to be partially credible.

Next, Mr. Thornton argues that the ALJ improperly found his testimony not credible. Specifically, Mr. Thornton asserts that the ALJ did not properly analyze certain relevant facts, including his testimony concerning his daily activities, his financial inability to purchase his

prescribed medications, and evidence that his doctor took him out of work in 2001. ECF No. 13 at 17-20.

In determining a claimant's RFC, the ALJ must implement a two-step process to evaluate a claimant's testimony. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether a claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. If such an impairment exists, the ALJ must then evaluate the intensity, persistence, and limiting effects of the symptoms allegedly arising from the impairments, in order to determine the extent that the alleged symptoms limit the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(b)-(c); *Craig*, 76 F.3d at 594. When considering Mr. Thornton's subjective complaints and allegations of symptoms and functional limitations, the ALJ makes a credibility assessment of the intensity of the symptoms to determine the true degree of limitation. *Id.; see also* C.F.R. § 404.1529(a). The ALJ must sufficiently explain her conclusions, including the weight assigned to evidence, in order for a reviewing court to evaluate the ALJ's final decision. *Ivey v. Barnhart*, 383 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005) (citing *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977)). This Court must give great discretion to the ALJ's decision when it is supported by substantial evidence, because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant . . . ." *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)).

Here, the ALJ found Mr. Thornton to have medically determinable impairments that could reasonably be expected to produce his alleged symptoms (hypertension, morbid obesity, high cholesterol). However, the ALJ determined that Mr. Thornton's testimony was only partially credible because the intensity, persistence, and limiting effects of his alleged symptoms are not

supported by objective medical evidence, opinions of treating or examining physicians, and absence of medical treatment one would expect for a disabled individual. R. 15, 19. The Court would find that the ALJ properly determined that Mr. Thornton overstated the limiting effects of his symptoms, based on the substantial evidence in the record, which included Mr. Thornton's own testimony concerning his daily activities, his failure to follow prescribed treatment, conservative treatment history, and lack of other objective medical evidence. R. 17-19

First, Mr. Thornton's daily activities show that he overstated the limiting effects of his symptoms. Although Mr. Thornton testified that his blood pressure was too uncontrollable for him to work, he also testified that he would spend four to six hours per day working on cars in his yard. R. 36, 39. Additionally, Mr. Thornton testified that in an effort to lose weight in 2006, he would weightlift, ride his bike for five to six miles each morning, and walk about three miles a few times each week. R. 50-51. Thus, the ALJ properly determined that Mr. Thornton's statements concerning his activities demonstrated that his testimony concerning the limiting effects of his symptoms was not fully credible. R. 19.

Second, Mr. Thornton's noncompliance with his prescribed medication demonstrates his overstatement of the limiting effects of his symptoms. The ALJ found that there were long periods of time before the alleged onset date that Mr. Thornton was noncompliant with his prescribed medications. R. 17. Specifically, Mr. Thornton was non-compliant with medications in 2003 and 2004. Additionally, the ALJ found that there was no evidence that Mr. Thornton attempted to purchase lower price medications. R. 18. When asked whether the Thorntons had ever attempted to purchase medications from a pharmacy that charges only a few dollars for some prescriptions, like Wal-Mart, Mrs. Thornton indicated that they had not used those services. R. 46. As a result, the ALJ properly determined that Mr. Thornton's noncompliance

12

with his prescribed medication undermined the credibility of his claim regarding the limiting effects of his symptoms. R. 18-19.

Finally, Mr. Thornton's conservative treatment history and the objective medical evidence in the record further raised doubts as to the limiting effects of his symptoms. There were no opinions from treating or examining physicians in the record to show that Mr. Thornton was disabled or had limitations greater than those determined by the ALJ in her decision. R. 19. Further, there was little to no medical evidence generated before Mr. Thornton's alleged onset date to show that he had "severe" physical conditions "for a continuous period of 12 months . . . that would have prevented him from engaging in substantial gainful activity." R. 18. "Pain is not disabling per se, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (quoting *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984)). The record is devoid of any objective medical evidence from 2004 through December 31, 2006.

Accordingly, the ALJ properly found Mr. Thornton's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not credible to the extent they were inconsistent with the ALJ's RFC determination. Substantial evidence supports the ALJ's decision, particularly because there is no medical evidence to show Mr. Thornton's alleged disability. R. 18. More than a claimant's own testimony is necessary to show disability. 42 U.S.C. § 423 (d)(5)(A) (explaining that "an individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); *see also* 20 C.F.R. 404.1529(a). Therefore, the Court would find that the ALJ properly found Mr. Thornton's testimony regarding his symptoms to be not fully credible.

13

### C. The ALJ properly considered the effects of Mr. Thornton's hypertension.

Lastly, Mr. Thornton argues that the ALJ did not consider the effects of his hypertension.
Mr. Thornton argues that although the ALJ found that his hypertension is a severe impairment,
"the ALJ failed to recognize and acknowledge that Mr. Thornton's untreated, uncontrolled high
blood pressure was a dangerous health condition, and that any work setting would have further
threatened his health and his life." ECF No. 13 at 23. Mr. Thornton's attorney asked the VE
hypothetical questions that took into consideration his high blood pressure, headaches, and
shortness of breath. R. 56. Mr. Thornton argues that the ALJ should have considered the
hypothetical questions and alleged limitations posed to the VE by his attorney. ECF No. 13 at
22-23.

However, the ALJ clearly accounted for the limitations resulting from Mr. Thornton's
hypertension in her assessment of Mr. Thornton's RFC. *See* R. 20. Pursuant to Medical-
Vocational Rule 203.19, if Mr. Thornton possessed the RFC to perform the full range of medium
work, the ALJ must find him "not disabled." Mr. and Mrs. Thornton both testified that due to
the shortness of breath and headaches resulting from Mr. Thornton's hypertension, after working
outside, he would get winded and lightheaded. R. 41, 50. The ALJ considered these symptoms
as demonstrated by her questioning of the VE positing Mr. Thornton's inability to work in
extreme heat and humidity. R. 54. Regardless of this limitation, Mr. Thornton is still able to lift,
carry, push, and pull 50 pounds occasionally and 25 pounds frequently. R. 53. Mr. Thornton
can stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday.
R. 51, 53. The only limitation to Mr. Thornton's RFC is that he must avoid "even moderate
exposure to extreme heat and humidity." R. 17.

Based on the testimony of Mr. and Mrs. Thornton and the objective medical evidence in the
record, the ALJ determined that Mr. Thornton has the RFC to perform the full range of medium

work. A claimant with an RFC to perform the full range of medium work and who is closely approaching advanced age, has a limited education, and has skilled or semiskilled work experience is not disabled, even if the skills are not transferable. 20 C.F.R. Pt. 404, Subpt. P, App. 2. The ALJ found that Mr. Thornton fell into these categories, and consequently is not disabled.

After considering Mr. Thornton's physical activities, limited by the effects of his high blood pressure, the Court would find that the ALJ properly determined that Mr. Thornton had the RFC to perform medium work, while avoiding even moderate exposure to extreme heat and humidity. *Id.* Based on the ALJ's assessment of the totality of the evidence, there is substantial evidence in the record to support the ALJ's determination that Mr. Thornton was not disabled during the relevant period from the alleged onset date to the date he was last insured. R. 19. The ALJ thoroughly considered the totality of the evidence, and tapered her questions to the VE based on her findings. The VE was able to find a number of jobs that Mr. Thornton would be qualified for based on the ALJ's hypothetical, which considered Mr. Thornton's RFC, age, education, and work experience. R. 53-55.

The ALJ properly did not consider other hypothetical questions posed to the VE by Mr. Thornton's attorney. When posing a question to the VE, an ALJ is required to incorporate only the limitations that she finds credible. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The ALJ asserted that the hypothetical questions and alleged limitations posed by Mr. Thornton's attorney were rejected because they are unsupported by substantial evidence. R. 20. The ALJ was not required to consider the limitations proposed by Mr. Thornton's attorney. *Id.*

In conclusion, the Court would find that the ALJ's determination was supported by substantial evidence.

## VI. RECOMMENDATION

For these reasons, the Court **RECOMMENDS** that the Acting Commissioner's Motion for Summary Judgment, ECF No. 16, be **GRANTED**, Mr. Thornton's Motion for Summary Judgment, ECF No. 12, be **DENIED**, the final decision of the Acting Commissioner be **AFFIRMED**, and this case be **DISMISSED**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a de novo determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to counsel of record for the parties.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 24, 2014

17

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Barbara Evans-Yosief
Evans-Yosief Law Firm, LLC
1517 Hardy Cash Drive
Hampton, Virginia 23666
Counsel for the Plaintiff

Joel E. Wilson
United States Attorney's Office
World Trade Center
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for the Defendant

Fernado Galindo
Clerk of the Court

By:

Deputy Clerk
February 25, 2014

18